IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 0 1 2010 ★

BROOKLYN OFFICE

H:\KMR\FORECLOS\Gefilhaus\96martense.com.wpd

Jeffrey M. Rosenberg (JR-3747)
KLEIN & SOLOMON, LLP
Attorneys for Plaintiffs
275 Madison Avenue, 11ᵗʰ Floor
New York, New York 10016
(212) 661-9400

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

96 MARTENSE ST. LLC,

              Plaintiff,

     -against-

ANNA CHERUBIN, SERGE CHERUBIN,
KINGS COUNTY HOSPITAL CENTER,
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, "JOHN DOE" Nos. 1-50
and "JANE DOE" Nos. 1-50,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X



CV10 - 413

Case No.

**COMPLAINT**

CARTER, M.J. ROSS, J.

    Plaintiff, by its attorneys, KLEIN & SOLOMON, LLP, complaining of Defendants, respectfully alleges as follows:

<u>**PARTIES**</u>

    1.    Plaintiff was and is a limited liability company whose three members are: (a) a citizen of the State of New Jersey; (b) a citizen of the United Kingdom; and (c) a citizen of the Confederation of Switzerland.

    2.    Upon information and belief, that at all times hereinafter mentioned, the defendant set forth in "Exhibit A-

Defendants" reside or have a place of business at the address set forth therein (any that are corporations being organized and existing under the laws of the State set forth therein) and are made defendants in this action in the capacities therein alleged and for the reasons set forth in said Exhibit "A."

3.    That all agencies or instrumentalities of the Federal, State or local government (however designated), named as defendants herein, are made parties solely by reason of the facts set forth in Exhibit "B."

## SUMMARY OF REQUESTED RELIEF

4.    Plaintiff seeks to foreclose a commercial mortgage on certain real property known and described as 96 Martense Street, Brooklyn, New York, given by Defendant Serge Cherubin and Yadlynd Cherubin to Flushing Savings Bank, FSB, to secure indebtedness in the principal amount of $300,000.00 (the "Mortgage"), as will be more particularly described below.

5.    Plaintiff is the assignee of the mortgagee's interest of Flushing Savings Bank, FSB, in the Mortgage, and Defendants Serge Cherubin and Anna Cherubin are assignees of the mortgagor's interest of Defendant Serge Cherubin and Yadlynd Cherubin in the Mortgage.

2

## JURISDICTION

6.    This Court has jurisdiction over the claims herein pursuant to 28 U.S.C. 1332, in that the action is between a limited liability company whose members are citizens of different States or foreign countries than all Defendants, and the amount in controversy exceeds $75,000.00.

7.    The Court has personal jurisdiction over the Defendants in that all of the Defendants reside or do business within the State of New York, and have minimum contacts with the State based on Defendants' continuous and systematic general business activities within the State of New York.

## VENUE

8.    Venue is proper in this District because a the property that is the subject of this action is located in this District, pursuant to 28 U.S.C. 1391(a)(3).

## FACTS

9.    That heretofore the Defendant Serge Cherubin and Yadlynd Cherubin, both named in "Exhibit C" (Exhibit "C" being a copy of the note evidencing the indebtedness to plaintiff's predecessor, hereinafter referred to as the "Note"), for the purpose of securing to Plaintiff's predecessor, its successors and assigns, a sum of

3

money, duly executed and acknowledged a certain note whereby they bound themselves, their successors or their heirs, executors, administrators and assigns, and each and every one of them, jointly and severally, in the amount of said sum of money, all as more fully appears together with the terms of repayment of said sum and rights of the plaintiff in Exhibit "C."

10. That as security for the payment of said indebtedness, the Mortgage was executed (Exhibit "D" being a copy of the Mortgage), acknowledged and delivered to Plaintiff's predecessor, whereby the mortgagor or mortgagors therein named, bargained, granted and sold to the mortgagee named therein, its successors and assigns, the premises more particularly described therein (hereinafter called "mortgaged premises"), under certain conditions with rights, duties and privileges between or among them as more fully appears in said mortgage.

11. That the Mortgage was duly recorded in the office of the New York City Register at the place and time which appears thereon.

12. That pursuant to an assumption agreement, a copy of which is annexed hereto as Exhibit "E," the mortgagors identified in Exhibit "D" subsequently assigned their interest in the Note and the Mortgage to the Defendants-mortgagors identified in Exhibit "E" as "Mortgagor."

4

13.  That pursuant to an Assignment of Mortgage, a copy of which is annexed hereto as Exhibit "F," Flushing Savings Bank, FSB assigned its mortgagee's interest in the Note and the Mortgage to Plaintiff.

14.  That the documents annexed hereto as Exhibits "E" and "F" were duly recorded in the office of the New York City Register at the place and time which appear thereon.

15.  That the Defendants so named have failed and neglected to comply with the conditions of said note and mortgage, by omitting and failing to pay items of principal and interest, all as more fully appears in Exhibit "G" and accordingly the plaintiff previously called due the entire amount secured by the Mortgage.

16.  That Exhibit "G" sets forth the principal balance due and the date (and rate) from which interest accrued and all other items and charges arising from said default which are now due.

17.  That in order to protect its security, Plaintiff may be compelled to pay during the pendency of this action to pay local taxes, assessments, water rates, insurance premium and other charges affecting the mortgaged premises, and Plaintiff requests that any sums thus paid by it for said purposes (together with interest thereon), should be added to the sum otherwise due  and be deemed secured by the said mortgage and be adjudged a valid lien on the mortgaged premises.

5

18.   That upon information and belief, all the defendants herein have, or claim to have, some interest in, or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of the Mortgage.

19.   That Plaintiff is now the sole, true and lawful owner of the Note and Mortgage securing the same and there are no pending proceedings at law or otherwise to collect or enforce the Note and Mortgage.

20.   That Exhibits "A," "B," "C," "D," "E," "F" and "G" are expressly incorporated and made a part of the Complaint for all purposes with the same force and effect as if they were completely and fully set forth herein whenever reference has been made to each or any of them.

21.   That by reason of the foregoing, there is now due and owing to Plaintiff upon the Note, the amount set forth in Exhibit "G."

**WHEREFORE,** Plaintiff demands judgment, adjudging and decreeing the amounts due the Plaintiff for principal, interest, costs and reasonable attorney's fees, if provided for in the Note or Mortgage and that the Defendants and all persons claiming by through or under them, or either or any of them, subsequent to the commencement of this action and every other person or corporation whose right, title, conveyance or encumbrance is subsequent to or

6

subsequently recorded, may be barred and forever foreclosed of all right, claim, lien, interest or equity of redemption in and to said mortgaged premises; that the said mortgaged premises, or such part thereof as may be necessary to raise the amounts due for principal, interest, costs, allowances and disbursements, together with any monies advanced and paid, may be decreed to be sold according to law; that out of the monies arising from the sale thereof, the plaintiff may be paid the amounts due on said Note and Mortgage and any sum which may be paid by Plaintiff to protect the lien of Plaintiff's Mortgage as herein set forth, with interest upon said amounts from the dates of the respective payments and advances thereof, the costs and expenses of this action, and reasonable attorney's fees, if provided for in said bond, note or mortgage, so far as the amount of such money properly applicable thereto will pay the same; that either or any of the parties to this action may become a purchaser upon such sale; that this Court, if requested, forthwith appoint a Receiver of the rents and profits of said premises with the usual powers and duties; and that the defendants referred to in paragraph "15" of this Complaint, may be adjudged to pay any deficiency that may remain after applying all of said monies so applicable thereto and that the Plaintiff may have such other or further relief, or both, in the premises as may be just and equitable.  Plaintiff specifically reserves its right to share

7

in any surplus monies arising from the sale of subject premises by virtue of its position as a judgment or other lien creditor excluding the Mortgage being foreclosed herein.

Dated:   New York, New York
         January 28, 2010

                                  KLEIN & SOLOMON, LLP

                              By:_____
                                  Jeffrey M. Rosenberg
                                  (JR-3747)
                                  Attorneys for Plaintiff
                                  275 Madison Avenue, 11th Fl.
                                  New York, New York 10016
                                  (212) 661-9400

8



FSC

Mixed Sources

Cert no. SW-COC-002980
www.fsc.org
© 1996 Forest Stewardship Council

## EXHIBIT "A" - PARTIES

Parties                                    Interest in Premises

1.   Anna Cherubin                         Certified owner of record
     999 East 39th Street
     Brooklyn, New York 11210

2.   Serge Cherubin                        Certified owner of record
     999 East 39th Street
     Brooklyn, New York 11210

3.   Kings County Hospital Center          Judgment creditor of
     451 Clarkson Avenue                   Serge Cherubin
     Brooklyn, New York 11203

3.   John Doe Nos. 1 through 50            Tenants and persons in
     96 Martense Street                    possession
     Brooklyn, New York 11226

4.   Jane Doe Nos. 1 through 50            Tenants and persons in
     96 Martense Street                    possession
     Brooklyn, New York 11226

9



FSC

Mixed Sources

Cert no. SW-COC-002989
www.fsc.org
© 1996 Forest Stewardship Council

## EXHIBIT "B" - GOVERNMENT ENTITY PARTY

Party                                    Interest in Premises

1.   New York City Environmental          Environmental Control
     Control Board                        Board judgments against
     66 John Street                       Anna Cherubin
     New York, New York 10038

MORTGAGE NOTE

LOAN NO <u>1407065513</u>
<u>New York</u>
(State)

230321
<u>March 28, 2003</u>          <u>Flushing,</u>
                              (City)

<u>96 Martense Street, Brooklyn, New York 11226</u>
(Property Address)

KNOW ALL MEN BY THESE PRESENTS, that **Yadlynd Cherubin** and **Serge Cherubin**, having an address at **999 East 38th Street, Brooklyn, New York 11210** hereinafter designated as the OBLIGOR, DOES HEREBY ACKNOWLEDGE itself to be indebted to FLUSHING SAVINGS BANK, FSB, a corporation organized and existing under the laws of the United States of America, whose principal office of business is at No. 144-51 Northern Boulevard, Flushing, Queens County, New York, hereinafter designated as the OBLIGEE, in the principal sum of **SEVENTY TWO THOUSAND NINE HUNDRED FORTY SEVEN AND 99/100 ($72,947.99\*) DOLLARS**
\* AS HEREIN CONSOLIDATED AND RESTATED TO FORM A SINGLE LIEN IN THE AMOUNT OF **THREE HUNDRED THOUSAND AND 00/100 ($300,000.00) DOLLARS**

lawful money of the United States, which sum, with interest thereon, to be computed from the date hereof, at the rate of

**SIX AND ONE QUARTER (6.250%)** PER CENT PER ANNUM,

the OBLIGOR does hereby covenant to pay to the OBLIGEE, at No. 144-51 Northern Boulevard, Flushing, Queens County, New York, or such other place as it may designate in writing, delivered or mailed to the OBLIGOR, by payment of the sum of,
**TWO HUNDRED EIGHT AND 32/100 ($208.32) DOLLARS**

as INTEREST ONLY on the first day of **April, 2003** and thereafter by payment of the sum of
**ONE THOUSAND NINE HUNDRED SEVENTY NINE AND 01/100 ($1,979.01) DOLLARS**

on the first day of **May, 2003** and thereafter by payment of the like sum of
**ONE THOUSAND NINE HUNDRED SEVENTY NINE AND 01/100 ($1,979.01) DOLLARS**

on the first day of each subsequent month through **April 1, 2008** ("Initial Term.")

Commencing **May 1, 2008** through **April 1, 2013** ("Second Term") payment on the unpaid balance of principal shall be two and one half (2.50%) percent over the weekly average yield on United States Treasury securities adjusted to a constant maturity of 5 years, as made available by the Federal Reserve Board as of forty five (45) days prior to the expiration of the **Initial** Term rounded up to the nearest one-eighth (1/8%) of one percent.

Commencing **May 1, 2013** through **April 1, 2018** ("Third Term") payment on the unpaid balance of principal shall be two and one half (2.50%) percent over the weekly average yield on United States Treasury securities adjusted to a constant maturity of 5 years, as made available by the Federal Reserve Board as of forty five (45) days prior to the expiration of the **Second** Term rounded up to the nearest one-eighth (1/8%) of one percent.

1

Commencing **May 1, 2018** through **April 1, 2023** ("Fourth Term") payment on the unpaid balance of principal shall be two and one half (2.50%) percent over the weekly average yield on United States Treasury securities adjusted to a constant maturity of 5 years, as made available by the Federal Reserve Board as of forty five (45) days prior to the expiration of the **Third** Term rounded up to the nearest one-eighth (1/8%) of one percent.

Commencing **May 1, 2023** through **April 1, 2028** ("Fifth Term") payment on the unpaid balance of principal shall be two and one half (2.50%) percent over the weekly average yield on United States Treasury securities adjusted to a constant maturity of 5 years, as made available by the Federal Reserve Board as of forty five (45) days prior to the expiration of the **Fourth** Term rounded up to the nearest one-eighth (1/8%) of one percent.

Said sums are to be applied first to the payment of interest on the unpaid balance of the principal due and owing to the OBLIGEE and the balance of said payment in reduction of principal. Said sums are to be made on the first day of each month until the first day of **April, 2028** ("Maturity Date") when the unpaid balance of principal, together with accrued interest, if not sooner paid, shall be due and payable.

In the event of default, the OBLIGEE shall have the right immediately and without notice or other action, to set off against undersigned's liability to the OBLIGEE any money owned by the OBLIGEE in its capacity to OBLIGOR whether due or not, and the OBLIGEE shall be deemed to have exercised such right of set-off and to have made a charge against any such money immediately upon the occurrence of a default under this Note, even though the actual book entries may be made at some time subsequent thereto.

Upon continuance for fifteen (15) days of any default in the payment of any installment of interest and/or principal due hereunder, or of any portion thereof, or of any penalty, or upon any default in the performance of any covenant, agreement or condition contained in the Mortgage securing the Note as herein modified within the time in said documents limited, then, at the option of the holder hereof, the whole principal sum with accrued interest shall become and be immediately due and payable without further notice, demand or presentment for payment, and thereupon interest on the principal sum shall thereafter be computed at the rate of twenty-four (24%) percent per annum.

It is intended by the OBLIGEE not to charge interest at a rate in excess of the maximum legal rate of interest permitted to be charged to the OBLIGOR of this Note under applicable New York State Law, and notwithstanding this, if fees, costs and interest are determined to be in excess of said applicable law, and are in excess of said maximum legal rate, the excess shall be retained by the holder of this Note and shall be applied in reduction of the principal sum, where applicable.
In the event OBLIGOR has incurred a default as provided for above there will be a default reinstatement fee of one (1%) percent of the then principal loan balance outstanding.

If this Note is placed in the hands of an attorney for collection, by suit or otherwise, or to enforce its collection, or to protect the security for its payment, the undersigned immediately and

2

without demand will pay all costs of collection and litigation together with a reasonable attorney's fee for Bank's attorney.

The undersigned and all other parties who at any time may be liable herein in any capacity, jointly and severally, waive presentment, demand for payment, protest and notice of dishonor of this Note, and authorize the OBLIGEE without notice to grant extensions in the time of payment of and reduction or increase in the rate of interest on any money owing on this Note.

In the event of default hereunder, the rate of interest until the entire unpaid balance of principal is paid to the holder of this Note, shall be as herein provided or that allowed by statute by the then applicable law, whichever is higher.
No extension, modification or waiver of any term or condition of this Note shall be valid or binding upon the OBLIGEE unless it is in writing and signed by an Officer of the OBLIGEE having power to consent to said extension, modification or waiver.

A waiver by the OBLIGEE of any of its rights or remedies on any one occasion shall not bar the OBLIGEE from exercising any of its rights or remedies of any subsequent occasion.  The OBLIGOR shall have the right to prepay the entire principal balance of this indebtedness provided all interest, late charges and prepayment premiums are paid to OBLIGEE at the time of repayment as follows:

On any monthly installment date commencing **April 1, 2003** and prior to **March 31, 2004** the owner of the mortgage premises may prepay the indebtedness, in whole or in part, upon giving sixty days prior notice in writing of intention to make such prepayment, and in addition thereto, a sum equal to five (5%) percent upon the amount of principal so prepaid.

On any monthly installment date commencing **April 1, 2004** and prior to **March 31, 2005** the owner of the mortgage premises may prepay the indebtedness, in whole or in part, upon giving sixty days prior notice in writing of intention to make such prepayment, and in addition thereto, a sum equal to four (4%) percent upon the amount of principal so prepaid.

On any monthly installment date commencing **April 1, 2005** and prior to **March 31, 2006** the owner of the mortgage premises may prepay the indebtedness, in whole or in part, upon giving sixty days prior notice in writing of intention to make such prepayment, and in addition thereto, a sum equal to three (3%) percent upon the amount of principal so prepaid.

On any monthly installment date commencing **April 1, 2006** and prior to **March 31, 2007** the owner of the mortgage premises may prepay the indebtedness, in whole or in part, upon giving sixty days prior notice in writing of intention to make such prepayment, and in addition thereto, a sum equal to two (2%) percent upon the amount of principal so prepaid.

On any monthly installment date commencing **April 1, 2007** and prior to **March 31, 2008** the owner of the mortgage premises may prepay the indebtedness, in whole or in part, upon giving sixty days prior notice in writing of intention to make such prepayment, and in addition thereto, a sum equal to one (1%) percent upon the amount of principal so prepaid.

Mortgage Note
Page Four
**March 28, 2003**

In the event that payment of the Principal Amount is accelerated at
any time by reason of any default under this Note, the Mortgage or
any other document securing this loan for any reason whatsoever,
during the period of which a prepayment charge may be levied, said
default shall be conclusively deemed to be a voluntary default and
a deliberate attempt on the part of the OBLIGOR to avoid the
prepayment charge stated herein.    In such event, the prepayment
charge shall immediately become due and payable and shall be
included in the amount owing and/or the amount tendered as payment
to satisfy the indebtedness.   The Obligee agrees that no prepayment
penalty shall be due in the event that the Obligor calls the
indebtedness based upon its analysis of two consecutive years of
financial statements.

No secondary financing will be permitted without the prior written
consent of the Bank.
In the event that any installment required under this Note shall
not be paid within 15 days of the due date thereof, a late charge
equal to 8% of the unpaid amount shall be immediately due and
payable.

The whole of the principal sum, or of any part thereof, and of any
other sum of money secured by the Mortgage given to secure this
Note, shall forthwith or thereafter, at the option of the OBLIGEE,
its successors and assigns, become due and payable if default be
made in any payment under this Note, or upon the happening of any
default, which by the terms of the Mortgage given to secure this
Note, shall entitle the Mortgagee to declare the same, or any part
thereof, to be due and payable, and all of the covenants,
agreements, terms and conditions of said mortgage are hereby
incorporated herein with the same force and effect as if herein set
forth at length.

The OBLIGEE shall have the right to annually inspect the mortgage
premises securing this Mortgage Note.

This Note is secured by a Mortgage dated May 25, 2001 made by
Yadlynd Cherubin and Serge Cherubin in favor of FLUSHING SAVINGS
BANK, FSB in the amount of $232,500.00, which Mortgage was recorded
on September 5, 2001 in the Office of the Register of Kings County
in Reel 5273, Page 1938; which Mortgage, now in the reduced amount
of $227,052.01 is hereby considered combined, restated,
consolidated, modified and made an equal and coordinate
indebtedness without priority of one over the other so that they
shall, as consolidated and restated, constituted in law a single
indebtedness in the amount of $300,000.00.


_____                    _____
Yadlynd Cherubin                            Serge Cherubin


4

Mortgage Note
Page Five
**March 28, 2003**

STATE OF NEW YORK )
                            ) SS.:
County of **QUEENS** )

On the **28th** day of **March** in the year **2003**, before me, the undersigned, personally appeared **Yadlynd Cherubin** and **Serge Cherubin**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

KEVIN REGAN
Notary Public, State of New York
No. 01RE6069089
Qualified in Queens County
Commission Expires January 22, 2006

5

## ALLONGE

This allonge pertains, and is intended to be permanently affixed to the following

described note(s):

> Mortgage Note dated March 28, 2003 by Yadlynd Cherubin and Serge
> Cherubin, as Makers, in favor of Flushing Savings Bank, FSB, as Lender,
> in the principal amount of $72,947.99, as consolidated with a Mortgage
> Note dated May 25, 2001 made by Makers to Lender in the original
> principal amount of $232,500.00 and restated in the amount of
> $300,000.00.

**PAY TO THE ORDER OF : 96 Martense St. LLC, having a present address**

**of P.O. Box 2, Lakewood, New Jersey 08701.**

THIS ALLONGE IS EXECUTED WITHOUT RECOURSE AND WITHOUT

REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED.

Dated as of July **2¹**, 2009

**FLUSHING SAVINGS BANK, FSB**

By: _Leonard A. Cecere_
Leonard A. Cecere
Vice President

STATE OF NEW YORK    )
                        ) ss:
COUNTY OF QUEENS    )

On the 2 | day of July, 2009, before me, the undersigned, a notary public in and for said
State, personally appeared Leonard A. Cecere, personally known to me or proved to me on the
basis of satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he executed the same in his capacity, and that by his
signature on the instrument, the individual, or the person upon behalf of which the individual
acted, executed the instrument.

_____
Notary Public

MARCIA Y. WITTER
Notary Public, State of New York
No. 01WI6183883
Qualified in Bronx County
Commission Expires March 31, 2012



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2003041600610001001E5856

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 19 |
|---|---|

**Document ID:** 2003041600610001     Document Date: 03-28-2003     Preparation Date: 04-16-2003
Document Type: MORTGAGE AND CONSOLIDATION
Document Page Count: 17

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| ULTIMATE ABSTRACT SERVICES | FLUSHING SAVINGS BANK, FSB |
| 121 WEST OAK STREET | 159-18 NORTHERN BLVD |
| RUASF6525K-KJ | FLUSHING, NY 11355 |
| AMITYVILLE, NY 11701 | 000-000-0000 |
| 631-598-0474 | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5090 | 13 | Entire Lot | 96 MARTENSE STREET |

Property Type: DWELLING ONLY - 6 FAMILY

### CROSS REFERENCE DATA

BROOKLYN   Year: 2001   Reel: 5273   Page: 1938

### PARTIES

| **MORTGAGOR:** | **MORTGAGEE:** |
|---|---|
| YADLYND CHERUBIN | FLUSHING SAVINGS BANK, FSB |
| 999 EAST 38 ST | 144-51 NORTHERN BLVD |
| BROOKLYN, NY 11210 | FLUSHING, NY 11354 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| **Mortgage** | | | Recording Fee: $ | 122.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 300,000.00 | Affidavit Fee:  $ | 8.00 |
| Taxable Mortgage Amount: | $ | 72,947.99 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 364.50 | $ | 0.00 |
| City (Additional): | $ | 729.00 | |
| Spec (Additional): | $ | 182.25 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 182.25 | |
| NYCTA: | $ | 0.00 | |
| TOTAL: | $ | 1,458.00 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed          06-12-2003 11:01
City Register File No.(CRFN):
            2003000167138

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2003041600610001001C5AD6

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 19 |
|---|---|

Document ID: 2003041600610001          Document Date: 03-28-2003                    Preparation Date: 04-16-2003
Document Type: MORTGAGE AND CONSOLIDATION

---

**PARTIES**
**MORTGAGOR:**
SERGE CHERUBIN
999 EAST 38 ST
BROOKLYN, NY 11210

*h + 6*
*tay = $ 1456.⁹⁵*
*R = 5096*
*L: 12*

R-# 230321

# MORTGAGE
## AND CONSOLIDATION

LOAN No. ML 1407065513

THIS MORTGAGE, made the **twenty eighth** day of **March, 2003** between
**YADLYND CHERUBIN AND SERGE CHERUBIN, having an address at 999 East 38th Street, Brooklyn,
New York 11210, the Mortgagor,**

~~XXXXXXXXXXXXXXXXX~~

and FLUSHING SAVINGS BANK, FSB a corporation organized and existing under the Banking Law of the United States
of America, and having its principal place of business at No. 144-51 Northern Boulevard, Flushing, Queens County,
New York, the MORTGAGEE.

WITNESSETH, that to secure the payment of an indebtedness in the principal sum of **SEVENTY TWO
THOUSAND NINE HUNDRED FORTY SEVEN AND 99/100—————————————**

————Dollars ($ **72,947.99\*** ),

which sum is to be paid, with interest thereon, according to a certain bond or obligation bearing even date
herewith, the Mortgagor hereby mortgages to the Mortgagee:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected,
situate, lying and being    **SEE SCHEDULE "A" ATTACHED HERETO**

**\*AS HEREIN CONSOLIDATED AND RESTATED TO FORM A
SINGLE LIEN IN THE AMOUNT OF THREE HUNDRED THOUSAND
AND 00/100 DOLLARS ($300,000.00)**

BEING the same premises conveyed to the Mortgagor(s) herein by deed dated the **twenty fifth** day of
**May, 2001** and recorded **September 5, 2001** in Reel **5273**, Page **1931** in the Office of the Register
of Kings County, New York

Title No. RUAS 6525K

SCHEDULE "A"

# DESCRIPTION

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF MARTENSE STREET WITH THE EASTERLY SIDE OF BEDFORD AVENUE;

RUNNING THENCE SOUTHERLY ALONG THE EASTERLY SIDE OF BEDFORD AVENUE 27 FEET 2 INCHES;

THENCE EASTERLY PARALLEL WITH MARTENSE STREET PART OF THE DISTANCE THROUGH A PARTY WALL, 74 FEET 2 ¾ INCHES TO THE WESTERLY SIDE OF LAND CONVEYED TO JOHN C. SAWKINS BY DEED RECORDED IN LIBER 1349 OF CONVEYANCES PAGE 301;

THENCE NORTHERLY ALONG SAID WESTERLY SIDE OF FORMERLY OF JOHN C. SAWKINS  27 FEET 2 1/8 INCHES TO THE SOUTHERLY SIDE OF MARTENSE STREET;

THENCE WESTERLY ALONG THE SOUTHERLY SIDE OF MARTENSE STREET 75 FEET  2 ¼ INCHES TO THE POINT OR PLACE OF BEGINNING.

TOGETHER WITH all right, title and interest of the Mortgagor in and to the land lying in the bed of the streets, roads or avenues in front of and adjoining said premises; together with the appurtenances and all the estate and rights of the Mortgagor in and to said premises and all fixtures now or hereafter attached to or used in connection with the premises herein described and in addition thereto the following described household appliances, which are, and shall be deemed to be, fixtures and a part of the realty and are a portion of the security for the indebtedness herein mentioned: Plumbing, heating, lighting and cooking fixtures and equipment; ranges, refrigerators, venetian blinds, screen doors and window screens, and storm doors and windows.

This mortgage also covers all damages awarded for the taking of or injury to the property herein mortgaged whether such taking or injury be done under the power of eminent domain or otherwise, as well as the dam-ages recovered or recoverable by reason of the changes of grades of streets affecting such premises. The Mortgagee is irrevocably authorized to collect, receive and give acquittance for all such sums, but all of same shall be credited on the indebtedness secured by this mortgage, irrespective of the maturity date thereof. Upon request, the Mortgagor shall execute and deliver any appropriate assignments and other instruments necessary for the enjoyment of the rights hereby granted.

AND the Mortgagor further covenants with the Mortgagee as follows:

1. The Mortgagor will pay the indebtedness as hereinbefore provided. Privilege is reserved to prepay ac-cording to bond bearing even date herewith.

2. In order more fully to protect the security of this mortgage, together with, and in addition to, the monthly payments of principal and interest payable under the terms of the bond secured hereby, the Mortgagor shall, unless notified to the contrary by the holder of this mortgage, pay to the Mortgagee on the first day of each month so long as the Mortgagee shall require or until the said bond is fully paid, the following sums:

    (a) A sum equal to the ground rent, if any, and the taxes and special assessments next due on the prem-ises covered by this mortgage, plus the premiums that will next become due and payable on policies of fire and other hazard insurance on the premises covered hereby (all as estimated by the Mort-gagee, and of which the Mortgagor is notified) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by Mortgagee to pay said ground rents, premiums, taxes, and special assessments, before the same become delinquent.

    (b) The aggregate of the amounts payable pursuant to subparagraph (a) and those payable on the bond secured hereby, shall be paid in a single payment each month, to be applied to the following items in the order stated:

        (I)  ground rents, taxes, assessments, water rates, fire and other hazard insurance premiums;

        (II)  Interest on the bond secured hereby; and

        (III)  amortization of the principal of said bond

        Any deficiency in the amount of any such aggregate monthly payment shall, unless made good by the Mortgagor prior to the due date of the next such payment, constitute a default under this mortgage.  In the event that any payment shall become overdue for a period in excess of fifteen (15) days, a "late charge" not to exceed an amount equal to two per centum (2%) or that legally allowed at time of default of any installment so overdue may be charged by the holder hereof for the purpose of defraying the ex-pense incident to handling such delinquent payment.

3. If the total of the payments made by the Mortgagor under (a) of paragraph 2 preceding shall exceed the amount of payments actually made by the Mortgagee for ground rents, taxes, assessments, water rates, or insurance premiums, as the case may be, such excess shall be credited on subsequent payments to be made by the Mortgagor for such items. If, however, such monthly payments shall not be sufficient to pay such items when the same shall become due and payable, then the Mortgagor shall pay to the Mortgagee any amount necessary to make up the deficiency.  Such payments shall be made within thirty (30) days after written notice from the Mortgagee stating the amount of the deficiency, which notice may be given by mail.  If at any time the Mortgagor shall tender to the Mortgagee in accordance with the provisions of the bond secured hereby, full payment of the entire indebtedness represented thereby, the Mortgagee shall, in computing the amount of such indebtedness, credit to the account of the Mortgagor any balance remaining in the funds accumulated under the provisions of (a) of paragraph 2 hereof. If there shall be a default under any of the provisions of this mortgage resulting in a public sale of the premises covered hereby, or if the Mortgagee acquires the property otherwise after default, the Mort-gagee shall apply, at the time of the commencement of such proceedings, or at the time the property is otherwise acquired, the amount then remaining in the funds accumulated under (a) of paragraph 2 preceding as a credit on the interest accrued and unpaid and the balance to the principal then remaining unpaid on said bond.

4. The Mortgagor shall pay all ground rents, taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions for which provision has not been made hereinbefore, and in default thereof the Mortgagee may pay the same; and the Mortgagor shall promptly deliver the official receipt there-for to the Mortgagee.

5. The lien of this instrument shall remain in full force and effect during any postponement or extension of the time of payment of the indebtedness or any part thereof secured hereby.

6. No building, fixtures, or personal property covered by this mortgage shall be removed or demolished without the written consent of the Mortgagee. The Mortgagor shall maintain the premises in a rentable and tenantable condition and state of repair, shall not suffer or permit anywaste, and shall promptly comply with all the requirements of the Federal, State, and municipal governments, or of any departments or bureaus thereof hav-ing jurisdiction.

7. Notice and demand or request may be made in writing and may be served in person or by mail.

8. The Mortgagor warrants the title to the premises.

9. This mortgage is, and will be maintained as, a valid first lien on the premises.

10. In case of sale under foreclosure the premises may be sold in one parcel.

11. The Mortgagor will not assign the rents or any part of the rents of the mortgaged premises without first obtaining the written consent of the Mortgagee to such assignment.

12. In compliance with the Lien Law of the State of New York the Mortgagor will receive the advances se-cured by this mortgage and will hold the right to receive such advances as a trust to be applied first for the purpose of paying the cost of any improvements heretofore made or now being made on, in and under the premises hereby mortgaged and will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose.

ENVIRONMENTAL RIDER

1.   If the Mortgagor is the present owner of the subject premises, the Mortgagor represents, warrants and covenants that Mortgagor has not used Hazardous Materials at or affecting the Premises in any manner which violates Federal, State or local laws, ordinances, rules or regulations governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials.

2.   Mortgagor represents that, to the best of Mortgagor's knowledge, no prior owner, occupant or operator of the Premises has used Hazardous Materials at or affecting the Premises in any manner which violates Federal, State or local laws, ordinances, rules or regulations governing the use, storage, treatment, transportation, manufacture, refinement, handling, production or disposal of Hazardous Materials.

3.   Mortgagor covenants that it shall keep or cause the Premises to be kept free of Hazardous Materials and not cause or permit the Premises to be used to generate, manufacture, refine, transport, treat, store, handle, dispose, produce or process Hazardous Materials, except in compliance with all applicable Federal, State and local laws or regulations.

4.   Mortgagor covenants to ensure compliance by all operators and occupants of the Premises with all applicable Federal, State and local laws, ordinances, rules and regulations and will ensure that all such operators and occupants obtain and comply with any and all required approvals, registrations or permits.

5.   Mortgagor shall, upon the request of Mortgagee, after receipt by the Mortgagee from any Federal, State or Municipal Environmental Protection Agency or Department having jurisdiction thereof, conduct and complete all investigations, studies, samplings and testings relative to Hazardous Materials at or effecting the Premises at the sole cost and expense of Mortgagor, to the extent as may be required by said Agency or Department.

6.   Mortgagor shall defend, indemnify, and hold harmless Mortgagee, its employees, agents, officers and directors from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature known or unknown, contingent or otherwise, arising out of or in any way related to Hazardous Materials at or affecting the Premises or the soil, water, vegetation, buildings, personal property, persons, animals or otherwise and any personal injury (including wrongful death) or property damage arising out of or related to such hazardous Materials.

7.   Foreclosure shall not operate as a discharge of Mortgagor's engagements as to Hazardous Materials and in the event Mortgagor tenders a deed in lieu of foreclosure, Mortgagor shall deliver the Premises to Mortgagee (or its designee) free of any and all Hazardous Materials.

8.   In the event Mortgagor does not timely perform any of the above obligations, Mortgagee may perform said obligations at the expense of Mortgagor and such expense shall be added to the amount secured by the lien of this Mortgage.

STATEMENT ATTACHED TO MORTGAGE

MORTGAGOR(S):   YADLYND CHERUBIN and SERGE CHERUBIN

MORTGAGEE(S):   Flushing Savings Bank, FSB

PREMISES:      96 MARTENSE STREET, BROOKLYN, NEW YORK 11226

CHECK THE APPROPRIATE BOX

1.  [XX]  The attached mortgage covers real property
          principally improved or to be improved by one or
          more structures containing in the aggregate not more
          than six residential dwelling units, each having
          their own separate cooking facilities.

2.  [  ]  The attached mortgage does not cover real property
          principally improved or to be improved by one or
          more structures containing in the aggregate not more
          than six residential dwelling units, each having
          their own separate cooking facilities.

DATED:   __March 28, 2003_____

_____
Yadlynd Cherubin

_____
Serge Cherubin

Signed by the person(s) making
the statement having personal
knowledge of the nature of the
improvements.

## RIDER TO MORTGAGE

MORTGAGEE:    FLUSHING SAVINGS BANK, FSB

MORTGAGOR:    YADLYND CHERUBIN and SERGE CHERUBIN

PREMISES:     96 MARTENSE STREET
              BROOKLYN, NEW YORK 11226

1.    The whole of the principal sum remaining unpaid shall, at the option of the holder of this mortgage, become due and payable immediately upon the conveyance of all or part of the premises hereby mortgaged without the prior written consent of the mortgagee.

2.    The whole of the said principal sum, and of any other sums of money secured by this mortgage, shall, at the option of the Mortgagee, become due and payable upon the failure of the Mortgagor to perform or comply with any covenant, agreement, term or condition of this mortgage, or of the note secured hereby, after the expiration of any applicable grace period and after notice, in accordance with the terms hereof and thereof, irrespective of whether or not the same be remedied by the Mortgagee.

3.    The whole of the principal sum or any part thereof, and of any other sum of money secured by this mortgage, given to secure the mortgage note, shall forthwith or thereafter, at the option of the Mortgagee, its successors and assigns, become due and payable if default be made in any payment under the mortgage note or upon the happening of any default after any applicable notice and expiration of the time to cure, if any, which by the terms of this mortgage given to secure the note, shall entitle the Mortgagee to declare the same, or any part thereof, to be due and payable, and all of the covenants, agreements, terms and conditions of the mortgage and mortgage note, are hereby incorporated herein with the same force and effect as if herein set forth at length.

    Presentment for payment, notice of dishonor, protest and notice of protest are hereby waived.

4.    If the Mortgagor is a Corporation, the Mortgagor represents that (a) either (1) the Certificate of Incorporation of the Mortgagor does not require a vote or consent of the shareholders to authorize the execution and delivery of this mortgage, or (2) if the Certificate of Incorporation of the Mortgagor requires such vote or consent, that the same has been had or given in full conformity with the requirements thereof, and (b) The Board of Directors of the Mortgagor has by proper action, which has not been revoked or modified, duly authorized the execution and delivery of this instrument by the officer or officers who have executed the same.

5.    The Mortgagor agrees that the Mortgagee, its agents, employees, or other duly authorized representatives, shall have the right to enter into and upon the mortgaged premises, or any portion thereof, at reasonable business hours for the purpose of making an annual physical inspection of the premises to determine if the exterior, interior or any part of the structure requires repairs or alterations, or if the security value of the mortgaged premises had depleted.

6.    The lien of this instrument shall remain in full force and effect during any postponement or extension of the time of payment

1

of the indebtedness, or any part thereof secured hereby.

7.   Any amounts accruing to the Mortgagee by reason of a breach of warranty or any litigation involving the validity or priority of this lien, shall be deemed to be a part of the indebtedness secured hereby.  In the event it shall become necessary for the mortgagee, or any future holder of this mortgage, to employ counsel to collect this note, or to protect or foreclose the security given for the accompanying mortgage note, the Mortgagor  also agrees to pay to the holder thereof reasonable attorney's fees for the services of such counsel, whether or not suit is actually completed.

8.   Upon any default, not cured after applicable notice and the expiration of applicable grace period, by the Mortgagor in the compliance with or performance of any of the terms, covenants or conditions of this mortgage, or of the note secured hereby, the Mortgagee may, at its option, remedy such default.  All payments made by the Mortgagee to remedy a default by the Mortgagor as aforesaid (including reasonable attorneys fees for legal services actually performed) and the total of any payment or payments due from the Mortgagor to the Mortgagee, together with interest at the rate provided for in the accompanying mortgage note or bond, or at the then legal rate, whichever is higher, shall be added to the indebtedness secured by this mortgage and shall be repaid to the Mortgagee upon ten (10) days demand.  Any such sum and the interest thereon shall be a lien on the premises prior to any other lien attaching or accruing subsequent to the lien of this mortgage.

9.   The whole of the principal sum remaining unpaid shall, at the option of the Mortgagee become due and payable provided the Mortgagor, or its lessee whose credit was taken into consideration at the time of making the loan secured herein, if any, or any guarantor shall not maintain proper records and accounts showing income and expenses in operation of the premises and within ninety (90) days after the close of each fiscal year submit to the Mortgagee profit and loss statements for said fiscal year by the Mortgagor and/or lessee.  Said statement shall be prepared by a financial officer of either the Mortgagor and/or lessee and shall be certified by the Mortgagor and prepared in accordance with the generally accepted accounting principals, which should be used to show the operation of said mortgaged premises.

If the mortgagor does not submit the annual operating statements for the mortgaged property as described in the preceding paragraphs, mortgagee shall have the option to increase the interest rate on the mortgage by one (1%) per cent per annum.  Mortgagor shall be granted a thirty (30) day period, after the notice requesting the financing statements has been issued, to submit current financial data.

In the event that for two consecutive years the fiscal profit and loss statement reflects, before depreciation, amortization and payment to Mortgagee (consisting of interest, reduction of principal and any escrow) a net income less than payment to Mortgagee for the respective fiscal periods, then the Mortgagee, at its option, shall have the right and privilege to call the indebtedness secured by the mortgage (or mortgages as consolidated herein, if appropriate) and interest accrued thereon.

10.  The whole of the principal sum remaining unpaid shall, at the option of the Mortgagee, become due and payable in the event a violation is placed against the mortgaged property by any municipal or state authority having jurisdiction thereof, and in the event the Mortgagor, or the then owner of the mortgaged property, does not act within thirty (30) days of the date of the notice of

violation to remove the same, or in the event said violation is not removed within a reasonable period of time thereafter, then and in that event, the Mortgagor, or the then owner of the mortgaged premises, shall be considered in default, and the whole of the principal sum secured by this mortgage shall forthwith, at the option of the Mortgagee, its successors and assigns, become due and payable.

11.  The Mortgagee, at its option, shall have the right and privilege to call the indebtedness secured by the mortgage, (or mortgages as consolidated herein, if appropriate) and interest accrued thereon, immediately due and payable in the event (a) any license, permit, consent or other approval required to operate the premises for its present use is canceled, withdrawn, not given, or not renewed, or not at all times in full force and effect, or (b) any notification is received by the Mortgagor or the operating lessee, from a governmental authority stating non-compliance with or violation of any governmental rule, law or ordinance    or requirements or compliance therewith is not accomplished within the time limits therein specified.  The time frame for compliance to have said license, permit, consent or other approval required to operate the premises shall be per paragraph 10 above for curing and removal of violations.

12.  Any deficiency in the amount of any aggregate monthly payment shall, unless made good by the Mortgagor prior to the due date of the next such payment, constitute a default under the terms of this mortgage.  In the event that any payment shall become overdue for a period in excess of fifteen (15) days, a "late charge" not to exceed an amount equal to eight per centum (8%), or that legally allowed at the time of default of any installment so overdue may be charged by the holder of this mortgage for the purpose of defraying the expense incident to handling such delinquent payment.    Such "late charge" if not previously paid, shall be added to and become a part of the next succeeding monthly payment to be made hereunder.

13.  That a waiver in one or more instances of any of the terms, covenants, condition or provisions hereof, or of the note or obligation secured hereby, shall apply to the particular instance or instances and at the particular time or times only, and no such waiver shall be deemed a continuing waiver, but all of the terms, covenants, conditions and other provisions of this mortgage and of the note or obligation secured hereby shall survive and continue to remain in full force and effect.

14.  That as the same pertains to other than residential units and pursuant to the provisions of Section 291-f of the New York Real Property Law, the Mortgagor covenants and agrees with the Mortgagee that the Mortgagor will not cancel, abridge or otherwise modify, without the consent of the Mortgagee, tenancies, subtenancies, leases or subleases of the said mortgaged premises, or any portion thereof, which may now be or hereafter come into existence.   The mortgagor further covenants with the Mortgagee not to accept prepayments of installments of rent to become due thereunder nor to waive, excuse, condone or in any other manner release or discharge the lessees, tenants or subtenants thereunder of and from the obligations, covenants, conditions and agreements by said lessees, tenants or subtenants to be performed without first obtaining the consent of the Mortgagee.  Any breach of the terms hereof shall entitle the Mortgagee to declare all sums secured hereby immediately due and payable.

15.  The Mortgagor, at its sole cost and expense, shall keep the buildings and other improvements insured during the term of this agreement against loss or damage by fire and against loss or damage

3

by other risks now or hereafter embraced by builders risk or regular fire, extended coverage, so called, in an amount not less then eighty (80%) percent of the original mortgage loan.   Such insurance shall be in companies and in forms satisfactory to the Mortgagee and each new policy shall contain the non-contributory New York Standard Mortgagee clause in favor of the mortgagee and full replacement cost endorsement.

16.   The Mortgagor shall furnish to the Mortgagee public liability insurance policies in forms and in amounts and companies satisfactory to the Mortgagee. Each policy of insurance required hereunder, or under covenant Number 15, shall contain a provision requiring the insurer to give the Mortgagee at least ten (10) days prior written notice before the said insurer shall have the right to cancel any policy, if such policy can be obtained.

17.   All notices, demands and requests hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by registered mail, return receipt requested, to either party hereto at its address stated above, or at such other address of which it shall have notified the party giving such notice in writing. Whenever in this mortgage the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

18.   Mortgagor agrees that the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises without notice, as a matter of right, without consideration of the value of the mortgaged premises as security for the amount, and such Receiver may be appointed immediately, regardless of whether thirty (30) days have expired after demand for payment, or whether the income has been specifically mortgaged or whether any other provisions of Sections 1202 and 1113 of the Business Corporation Law or any amendment thereto or other statute of similar nature imposing conditions precedent to the appointment of a Receiver of corporate property is complied with.

19.   That after any default hereunder and failure to cure same upon ten (10) days written notice thereof from Mortgagee to Mortgagor, whether or not an action to foreclose this mortgage has been commenced, or a Receiver appointed, the then owner of the mortgaged premises shall, upon demand, surrender possession of the premises to the holder of this mortgage, and the holder of this Mortgage may enter upon said premises and let same and collect all rents therefrom which are due or to become due and apply same, after payment of all charges and expenses, on account of the indebtedness secured by this mortgage; and the said rents and all leases existing at the time of such default are, in the event of such default, hereby assigned to the holder of this mortgage.   In the event of such default, the holder of this mortgage, by virtue of such right to possession, or as the agent of the then owner of these mortgaged premises, may dispossess, by the usual summary proceedings, any tenant defaulting in the payment of rent to the holder of this mortgage.   In the event that the then owner of the mortgaged premises is the occupant of said premises, or any part thereof, such occupant agrees to surrender possession of the premises to the holder of such mortgage immediately upon any default hereunder; and if such occupant remains in possession, at the Mortgagee's option, the possession shall be as tenant of the holder of such mortgage and such occupant agrees to pay, in advance, to the holder of such mortgage, such rent for the premises so occupied as the holder of the mortgage may demand, and in default of so doing, such occupant may also be dispossessed by the

4

usual summary proceedings. The Mortgagor makes these covenants for itself and for any subsequent owner of the mortgaged premises and these covenants shall become effective immediately after the happening of such default solely on the determination of the then holder of this mortgage, who shall give notice of such determination to the then owner of these mortgaged premises. In case of foreclosure and the appointment of a Receiver of rents, the covenants herein contained shall inure to the benefit of the Receiver.

20. The Mortgagor agrees that it will pay all interest and principal when due, taxes, assessments, water and sewerage rates and insurance premiums, and in default thereof, the Mortgagee may pay the same. In the event that the mortgagee shall pay any such interest or principal, premiums, tax, assessment or sewage or water rates, the Mortgagee shall have the additional right to declare the amount so paid, with interest thereon at the rate referred to in the accompanying note, immediately due and payable, and upon default of the Mortgagor to pay such amount with interest thereon, the mortgagee shall have the right to foreclose for such amount subject to the continuing lien of the balance of the mortgage debt not then due.

21. That whenever reference is made in this mortgage to "Mortgagor", the same shall also be deemed to refer to the present or future owner of the premises.

22. No failure by the Mortgagee to insist upon the strict performance of any term hereof or to exercise any right, power or remedy consequent upon a breach thereof, shall constitute a waiver of any such term or of any such breach. No waiver of any breach shall affect or alter this mortgage, which shall continue in full force and effect with respect to any other then existing or subsequent breach.

23. The Mortgagor will, in the same manner as provided herein, keep the personal property mortgaged hereby (if there is any personal property) insured against loss by fire for the benefit of the Mortgagee and will assign and deliver the policies to the Mortgagee and reimburse the Mortgagee for any premiums paid for insurance made by the Mortgagee or the Mortgagor's default in so insuring such personal property or in so assigning and delivering the policies; that the provisions of Section 254 of the Real Property Law shall apply to such insurance in the same manner as the insurance required under paragraph 2 hereof; and that the Mortgagor will notify the mortgagee promptly of any loss or damage to the building of such personal property by reason of fire or other casualty or hazard (it being understood that nothing contained in this Paragraph 23 shall prevent Mortgagor from removing personal property from the mortgaged premises). Mortgagor further agrees that notwithstanding anything to the contrary which may be contained in this Paragraph 23, or in any other paragraph of this mortgage, it shall keep the buildings on the premises and personal property insured to the extent and with limits not less than those required by the holders of the construction mortgage, if any, and permanent mortgage.

24. All covenants and conditions hereof, other than those included in New York statutory short form of mortgage, shall be construed as affording to the Mortgagee rights additional to, and not exclusive of the rights conferred under the provisions of Section 254 of the Real Property Law of the State of New York.

25. The lien of this mortgage is hereby extended so as to cover (a) all buildings, structures, improvements, fixtures, goods,

5

chattels, equipment and articles of personal property of every kind
and character affixed to or placed upon or used in connection with
the operation, occupancy or use and enjoyment of said premises
which may be owned by Mortgagor, to all of which the Mortgagor
represents that it has title free from all prior liens and
encumbrances, and (b) all buildings, structures, improvements,
fixtures, goods, chattels, equipment and articles of personal
property of every kind and character at any time hereafter
constructed on or affixed to or placed upon said premises or used
in connection with the operation, occupancy or use and enjoyment
thereof, which may be owned by Mortgagor in connection with the
operation of the common areas of the premises. The term "articles"
of personal property used in connection with the operation,
occupancy or use and enjoyment of said premises, as herein
employed, shall be deemed to include, but shall not be limited to
the following:    all partitions, elevators, engines, motors,
dynamos, boilers, fuel, fuel tanks, pumps, bathtubs, water closets,
ranges, stoves, carpets, rugs, awnings, screens, window shades,
venetian blinds, heating, refrigerating, air conditioning,
plumbing, gas and electric systems, equipment and fixtures, vacuum
cleaning system, sprinkler system and other fire preventing or
extinguishing systems, equipment and materials, furniture and
furnishings, and all other articles constituting a part of or used
in connection with the operation of the plant of said premises. If
the lien of this mortgage be subject to a conditional bill of sale,
chattel mortgage or financing statement covering any personal
property herein described or hereby intended to be covered by this
mortgage, then and in the event of any default in this mortgage,
all the right, title and interest of the Mortgagor in and to such
property is hereby assigned to the Mortgagee together with the
benefit of any deposits or payment now or hereafter made thereon by
the Mortgagor or the predecessors or successors in title of the
Mortgagor to the premises.   The pledge of personalty by the
Mortgagor to the Mortgagee under the terms of this paragraph, does
not apply to the property of the individual unit owners within
their respective units.

26.   In the event of any uncured default herein, the Mortgagee may
at its option, without notice, make or cause to be made a so-called
foreclosure search in preparation for the institution of a
foreclosure action, and take such other steps as may be necessary
and desirable for that purpose; and the expenses so incurred shall
become a part of the indebtedness secured by this mortgage; and
whether such foreclosure is actually instituted and carried to
judgment, or is not instituted at all, or after having been
instituted, is discontinued, the expenses so incurred in connection
therewith, including reasonable legal fees also may be added by
Mortgagee to the indebtedness secured by this mortgage, and shall,
at the option of the Mortgagee, become immediately due and payable;
provided, however, that in no event shall Mortgagor be liable for
more than the actual cost to mortgagee of such foreclosure search
made by a title company.

27.   That neither the value of the mortgaged premises, nor the lien
of this mortgage, will be diminished or impaired in any way by any
act or omission of the Mortgagor, and that the Mortgagor will not
do or permit to be done, to, in, upon or about the said premises,
or any part thereof, anything that may in anyway substantially
impair the value thereof or weaken, diminish or impair the security
of this mortgage.

28.   The Mortgagor will keep the buildings on the premises insured
against loss by flood if the premises are located in an area
identified by the Secretary of Housing and Urban Development as an
area having special flood hazards and in which flood insurance has

been made available under the National Flood Insurance Act of Nineteen Hundred Sixty-Eight; that he will assign and deliver the policies to the Mortgagee; and that he will reimburse the Mortgagee for any premiums paid for insurance made by the Mortgagee on the Mortgagor's default in so insuring the buildings or in so assigning and delivering the policies.

In the event that the premises described herein are located in an area designated by the United State Department of Housing and Urban Development (HUD) as a flood hazard area, or if the area should, at some time during the term of this mortgage, be designated by HUD as a flood hazard area, then and in that event, the Mortgagor shall, at his own cost and expense, obtain appropriate flood insurance, in an amount acceptable to the Mortgagee and naming FLUSHING SAVINGS BANK, FSB its successors or assigns as first mortgagee.

29.  Notwithstanding the terms of Paragraph 20 of this Rider, the Mortgagor hereby agrees to deposit each month with the Mortgagee a sum equivalent to one-twelfth (1/12) the annual real estate taxes, water assessments and sewer rates, ground rents, leasehold payments and flood insurance, if any, said payments to be made along with Mortgagor's regular monthly payment of this mortgage loan. Mortgagor further agrees to deposit with the Mortgagee a sum sufficient to allow the Mortgagee to pay said real estate taxes, water assessments, sewer rents, ground rents and leasehold payments, if any, without deficiency when said expenses shall become due, either in installments or on an annual basis, as the case may be, upon the execution of this mortgage.

30.  In the event of a fire or other casualty which shall give rise to payment of proceeds under the policy of insurance insuring the premises described herein, said proceeds shall be applied to the restoration of the mortgaged premises provided the Mortgagor shall give the Mortgagee 30 days notice as set forth Section 254 of the Real Property Law of the State of New York.

31. The Mortgagor hereby agrees that they will not further encumber the premises described herein.

32. INTEREST AFTER DEFAULT.  If any payment due under this Mortgage or under the Note is not paid when due either at the stated or accelerated maturity date, then and in such event, interest shall accrue on the unpaid principal balance of the loan at the rate of interest calculated at the rate stated in the Note or at the rate of interest charged by the Mortgagee for commercial loans of this type being offered by the Mortgagee, which ever rate is higher.

33.  In the event that the loan, as evidenced by the Note executed simultaneously herewith, not be satisfied at its designated maturity date the monthly rate of interest shall be the higher of either the previously established rate in effect or five hundred basis points (5%) above the Federal Home Loan Bank of New York prime rate of interest on the last day of the month preceding the monthly due date of payment.

34.  Paragraph "17" of the printed portion of the Mortgage is hereby amended so that the obligation to surrender possession shall only be after the expiration of any applicable notice provisions and time to cure said defaults.

35.  The entire unpaid principal balance of the Note, together with all interest accrued and unpaid thereon and all other sums due under the Note shall be due and payable on the Maturity Date, **April 1, 2028** as referred to herein.

36.  No extension, modification or waiver of any term or condition of this Note shall be valid or binding upon the Mortgagee unless it

is in writing and signed by an Officer of the Mortgagee having
power to consent to said extension, modification or waiver.

37.  A waiver by the Mortgagee of any of its rights or remedies on
any one occasion shall not bar the Mortgagee from exercising any of
its rights or remedies of any subsequent occasion.

38.   In the event that payment of the Principal Amount is
accelerated at any time by reason of any default under this Note,
the Mortgage or any other document securing this loan for any
reason whatsoever, during the period of which a prepayment charge
may be levied, said default shall be conclusively deemed to be a
voluntary default and a deliberate attempt on the part of the
Mortgagor to avoid the prepayment charge stated herein.   In such
event, the prepayment charge shall immediately become due and
payable and shall be included in the amount owing and/or the amount
tendered as payment to satisfy the indebtedness.

39.   In the event of default, the Mortgagee shall have the right
immediately and without notice or other action, to set off against
undersigned's liability to the Mortgagee any money owned by the
Mortgagee in its capacity to Mortgagor whether due or not, and the
Mortgagee shall be deemed to have exercised such right of set-off
and to have made a charge against any such money immediately upon
the occurrence of a default under this Note, even though the actual
book entries may be made at some time subsequent thereto.   This
provision applies only to the premises secured hereby and not to
other debts which the Mortgagor may be obligated to the Mortgagee
to pay.

40.  Upon continuance for fifteen (15) days of any default in the
payment of any installment of interest and/or principal due
hereunder, or of any portion thereof, or of any penalty, or upon
any default in the performance of any covenant, agreement or
condition contained in the Mortgage securing this Note within the
time in said documents limited, then, at the option of the holder
hereof, the whole principal sum with accrued interest shall become
and be immediately due and payable without further notice, demand
or presentment for payment, and thereupon interest on the principal
sum shall thereafter be computed at the rate of twenty-four (24%)
percent per annum.

It is intended by the Mortgagee not to charge interest at a rate in
excess of the maximum legal rate of interest permitted to be
charged to the Mortgagor of this Note under applicable New York
State Law, and notwithstanding this, if fees, costs and interest
are determined to be in excess of said applicable law, and are in
excess of said maximum legal rate, the excess shall be retained by
the holder of this Note and shall be applied in reduction of the
principal sum, where applicable.

In the event Mortgagor has incurred a default as provided for above
there will be a default reinstatement fee of one (1%) percent of
the then principal loan balance outstanding.

41.   If the Note is placed in the hands of an attorney for
collection, by suit or otherwise, or to enforce its collection, or
to protect the security for its payment, the undersigned
immediately and without demand will pay all costs of collection and
litigation together with a reasonable attorney's fee for Bank's
attorney.

42.  The undersigned and all other parties who at any time may be
liable herein in any capacity, jointly and severally, waive
presentment, demand for payment, protest and notice of dishonor of
this Note, and authorize the Mortgagee without notice to grant
extensions in the time of payment of and reduction or increase in

the rate of interest on any money owing on the Note which this Mortgage secures.

43.  The whole of the principal sum, or of any part thereof, and of any other sum of money secured by the Mortgage given to secure the Note, shall forthwith or thereafter, at the option of the Mortgagee, its successors and assigns, become due and payable if default be made in any payment under the Note, or upon the happening of any default, which by the terms of the Mortgage given to secure the Note, shall entitle the Mortgagee to declare the same, or any part thereof, to be due and payable, and all of the covenants, agreements, terms and conditions of said mortgage are hereby incorporated herein with the same force and effect as if herein set forth at length.

44.  Reference to default within the terms of this rider shall be deemed a default beyond the expiration of any applicable grace period.

45.  As referred to herein, and where the word "mortgage", "mortgagee" and "mortgagor" or "obligor" and "obligee" may be set forth in this Rider, for the purpose of this Rider, the same is substituted and intended to mean as set forth in this Mortgage.

46.  The Mortgagee shall have the right to annually inspect the mortgage premises securing this Mortgage.

47.  Where there is a conflict between the terms of the printed form of the Mortgage and this Rider, the terms of this Rider shall prevail.

48.  Mortgagor shall have thirty (30) days to cure non-monetary defaults under the terms of the Note and Mortgage after which Mortgagee may avail itself of any and all remedies afforded it.

49.  This Mortgage and a Mortgage dated May 25, 2001 made by Yadlynd Cherubin and Serge Cherubin in favor of FLUSHING SAVINGS BANK, FSB in the amount of $232,500.00, which Mortgage was recorded on September 5, 2001 in the Office of the Register of Kings County in Reel 5273, Page 1938; which Mortgage, now in the reduced amount of $227,052.01 is hereby considered combined, restated, consolidated, modified and made an equal and coordinate indebtedness without priority of one over the other so that they shall, as consolidated and restated, constituted in law a single indebtedness in the amount of $300,000.00.


YADLYND CHERUBIN

SERGE CHERUBIN

9

STATE OF NEW YORK )
) SS.:
County of QUEENS )

On the **28th** day of **March**, in the year **2003**, before me, the undersigned, personally appeared **Yadlynd Cherubin** and **Serge Cherubin**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

KEVIN REGAN
Notary Public, State of New York
No. 01RE6069089
Qualified in Queens County
Commission Expires January 22, 2006

10

13. The Mortgagor will continuously maintain fire and such other hazard insurance as the Mortgagee may require on the buildings and improvements now or hereafter on said premises, and except when payment on all such premiums has heretofore been made under (a) of paragraph 2 hereof, will pay promptly when due any premiums therefor. All insurance shall be carried in companies approved by the Mortgagee and the policies and renewals shall be held by it and have attached thereto loss payable clauses in favor of and in form acceptable to the Mortgagee. In the event of loss he will give immediate notice by mail to the Mortgagee who may make proof of loss if not made promptly by the Mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the Mortgagee instead of to the Mortgagor and the Mortgagee jointly, and the insurance proceeds, or any part thereof, may be applied by the Mortgagee at its option, either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In the event of foreclosure of this mortgage, or other transfer of the title to the mortgaged property in extinguishment of the debt secured hereby, all, right, title, and interest of the Mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee.

14. Upon any default by the Mortgagor in the compliance with, or performance of, any of the terms, covenants, or conditions of this mortgage or of the bond secured hereby, the Mortgagee may at its option remedy such default. All payments made by the Mortgagee to remedy a default by the Mortgagor as aforesaid (including reasonable attorney's fees for legal services actually performed) and the total of any payment or payments due from the Mortgagor to the Mortgagee and in default, together with interest thereon at the rate of six per centum (6%) per annum shall be added to the debt secured by this mortgage and shall be repaid to the Mortgagee upon demand. Any such sum and the interest thereon shall be a lien on the premises, prior to any other lien attaching or accruing subsequent to the lien of this mortgage.

15. The whole of the said principal sum and of any other sums of money secured by this mortgage shall, at the option of the Mortgagee, become due and payable upon the failure of the Mortgagor to perform or comply with any covenant, agreement, term, or condition of this mortgage or of the bond secured hereby in accordance with the terms hereof and thereof, irrespective of whether or not the same be remedied by the Mortgagee.

16. Any amounts accruing to the Mortgagee by reason of a breach of warranty or any litigation involving the validity or priority of this lien, shall be deemed to be a part of the indebtedness secured hereby.

17. The rents, issues and profits of said property and all the leases existing at the time of any default hereunder are hereby assigned to the holder of this Mortgage as further security for the payment of said indebtedness. After any default hereunder the Mortgagor or any subsequent owner shall, upon demand, surrender possession of the premises to the holder of this mortgage, and the holder of this mortgage may enter upon the premises and let the same and collect all the rents therefrom, which are due, or to become due, and apply the same, after payment of all charges and expenses, on account of the indebtedness hereby secured. The holder of this mortgage may also dispossess, by the usual summary proceedings, any tenant defaulting in the payment to the holder of this mortgage of any rent. In the event that the Mortgagor or any subsequent owner of said premises occupies the same, the Mortgagor agrees for himself and for such owner to surrender possession of the premises to the holder of this mortgage immediately upon any default hereunder and if such Mortgagor or subsequent owner remains in possession after any default the possession shall be as tenant of the holder of this mortgage and the Mortgagor or such subsequent owner agrees to pay in advance upon demand to the holder of this mortgage as a reasonable monthly rental for the premises an amount at least equivalent to one-twelfth (1/12) of the aggregate of the twelve monthly installments payable in the then current year, plus the actual amount of the annual ground rent, taxes, assessments, water rates, and insurance premiums for such year not covered by the aforesaid monthly payments, and in default of so doing such Mortgagor or subsequent owner may also be dispossessed by the usual summary proceedings. This covenant shall become effective immediately after the happening of any such default, solely on the determination of the then holder of this mortgage, who shall give notice of such determination to the Mortgagor or subsequent owner of the mortgaged premises. In case of foreclosure and the appointment of a receiver of the rents, this covenant shall inure to the benefit of such receiver.

18. The holder of this mortgage in any action to foreclose it, shall be entitled to the appointment of a receiver without notice, as a matter of right and without regard to the value of the mortgaged premises, or the solvency or insolvency of any person or persons liable for the payment of the mortgage indebtedness.

19. Nothing in this mortgage contained shall be construed as depriving the Mortgagee of any right or advantage available under Section 254 of the Real Property Law of the State of New York; but all covenants herein differing therefrom shall be construed as conferring additional and not substitute rights and advantages.

20. The Mortgagor covenants that he or any owner of the mortgaged premises within five days upon request, in person or by mail, will furnish written statement duly acknowledged of the amount due of this mortgage and whether any offsets or defenses exist against the mortgage debt; that the whole of said principal sum and interest shall become due at the option of the holder of this mortgage in event of the passage of any law deducting from the value of land for the purpose of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes, on thirty (30) days' notice to the Mortgagor or any owner of the mortgaged premises.

The covenants herein contained shall bind, and the benefits and advantages shall inure to the respective heirs, executors, administrators, successors, and assigns of the parties hereto. Whenever appropriate, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders, and the term "Mortgagee" shall include any payee of the indebtedness hereby secured or any transferee thereof whether by operation of law or otherwise. The term "Water Rates" wherever used herein shall include sewer rent charges.

IN WITNESS WHEREOF, this mortgage has been duly executed by the Mortgagor.

In presence of

FLUSHING SAVINGS BANK, FSB

BY:

JOHANNA M. CAVA, V.P.

............................................ (L. S.)
YADLAND CHERUBIN

............................................ (L. S.)
SERGE CHERUBIN

............................................ (L. S.)

............................................ (L. S.)

STATE OF NEW YORK
COUNTY OF   QUEENS          } SS:

On the  28th  day of   March                    in the year  2003          , before me, the undersigned,
personally appeared    JOHANNA M. CAVA                           , personally known to me or proved
to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by
his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s)
acted, executed that instrument.

_____
Notary Public

KEVIN REGAN
Notary Public, State of New York
No. 01RE6069089
Qualified in Queens County
Commission Expires January 22, 2006

STATE OF NEW YORK
COUNTY OF   QUEENS          } SS:

On the  28thday of   March                    in the year  2003          , before me, the undersigned,
personally appeared    SERGE CHERUBIN AND YADLYND CHERUBIN                , personally known to me or proved
to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by
his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s)
acted, executed that instrument.

_____
Notary Public

KEVIN REGAN
Notary Public, State of New York
No. 01RE6069089
Qualified in Queens County
Commission Expires January 22, 2006

TITLE #

STATE OF NEW YORK

LOAN No. ML 1407065513

MORTGAGE

YADLYND CHERUBIN
AND
SERGE CHERUBIN

TO

FLUSHING SAVINGS BANK, FSB

The premises affected by the
within instrument lie in
Section 16 , Block 5090  Lot 13
on the Tax Map of the
County of   KINGS

R & R

FLUSHING SAVINGS BANK, FSB
159-18 NORTHERN BOULEVARD
FLUSHING, NY 11358
Attn:  Loan Servicing Dept.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2003041600610001001S96D7

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2003041600610001          Document Date: 03-28-2003          Preparation Date: 04-16-2003
Document Type: MORTGAGE AND CONSOLIDATION

**SUPPORTING DOCUMENTS SUBMITTED:**

255 MORTGAGE TAX EXEMPT AFFIDAVIT

Page Count
2

```
FL087:230321
APPLICATION NO. 000002057
```

STATE OF NEW YORK      )
                       SS.
COUNTY OF QUEENS       )

     The undersigned, being duly sworn, deposes and says : The undersigned makes this Affidavit
in connection with an application for exemption under Section 255 of the Tax Law in the
recording of a Consolidation and Extension Agreement between **Flushing Savings Bank, FSB** and
<u>YADLYND CHERUBIN</u> and <u>SERGE CHERUBIN</u>

The Consolidation and Extension Agreement above mentioned covers the following mortgages:

A. YADLYND CHERUBIN              Amount   : $232,500.00
   SERGE CHERUBIN                Dated    : 5/25/01
          TO                     Recorded : 9/05/01
   **FLUSHING SAVINGS BANK, FSB**    Liber    : 5273
                                 Page     : 1938

and for which a mortgage tax of $ *was paid thereon, respectively, which
mortgage is now reduced to $227,052.01

                                 Amount: $72,947.99
B. YADLYND  CHERUBIN             DATED:  MARCH 28,
   SERGE  CHERUBIN               2003
         TO
   **Flushing Savings Bank, FSB**

and which mortgage shall be recorded immediately prior to the said agreement and for which a
mortgage tax of $ 1458⁰⁰ will be paid thereon.
On information and belief, the said amounts of said mortgages referred to in "A" and "B"
above were loaned or advanced thereon and become secured thereby and after said amounts were
advanced, no reloans or readvances have become secured thereunder up to the date hereof.

Submitted herewith is a Consolidation and Extension Agreement between
**Flushing Savings Bank, FSB** and <u>YADLYND  CHERUBIN</u> and <u>SERGE  CHERUBIN</u> ,
and dated MARCH 28, 2003 representing the above two (2) mortgages
as consolidated  into a single lien of $300,000.00  and does not represent
any new or other consideration, lien or indebtedness. No mortgage tax is due or payable on
this Consolidation and Extension Agreement.

     As further and additional security for payment of the indebtedness secured by
the mortgages, <u>YADLYND  CHERUBIN</u> and <u>SERGE  CHERUBIN</u>
has executed and delivered to Flushing Savings Bank, FSB a certain Assignment of Lessor's
interest in Lease(s) dated <u>MARCH 28, 2003</u> (the "Assignment")

     Said Consolidation and Extension Agreement and said Assignment are given solely for
the purpose of further securing the same principal indebtedness which is or under any
contingency may be secured by the above-mentioned Mortgages and that such Consolidation and
Extension Agreement and such Assignment do not create or secure any new or further indebtedness
or obligation other than the principal indebtedness or obligation secured by
or which under any contingency may be secured by the above-mentioned Mortgages.

     WHEREFORE, deponent respectfully requests that such Consolidation and Extension Agreement
and such Assignment be declared exempt from taxation pursuant to the provisions of section 255
of Article 11 of the Tax Law.

_____
YADLYND   CHERUBIN

_____
SERGE  CHERUBIN

Sworn to before me this

28 day of MARCH, 2003

_____

KEVIN REGAN
Notary Public, State of New York
No. 01RE6069089
Qualified in Queens County
Commission Expires January 22, 2006

FL087:230321
APPLICATION NO. 000002057

STATE OF NEW YORK     )
                      ) SS.
COUNTY OF QUEENS      )

The undersigned, being duly sworn, deposes and says : The undersigned makes this Affidavi
in connection with an application for exemption under Section 255 of the Tax Law in the
recording of a Consolidation and Extension Agreement between **Flushing Savings Bank, FSB** and
YADLYND  CHERUBIN  and SERGE  CHERUBIN

The Consolidation and Extension Agreement above mentioned covers the following mortgages:

A. YADLYND CHERUBIN          Amount    : $232,500.00
   SERGE CHERUBIN            Dated     : 5/25/01
        TO                   Recorded  : 9/05/01
   **FLUSHING SAVINGS BANK, FSB**    Liber     : 5273
                             Page      : 1938

and for which a mortgage tax of $ ⁴⁰·⁰⁰*, was paid thereon, respectively, which
mortgage is now reduced to $227,052.01

                             Amount: $72,947.99
B. YADLYND  CHERUBIN         DATED:  MARCH 28,
   SERGE  CHERUBIN           2003
        TO
   Flushing Savings Bank, FSB

and which mortgage shall be recorded immediately prior to the said agreement and for which a
mortgage tax of $ NSk³⁹  will be paid thereon.
On information and belief, the said amounts of said mortgages referred to in "A" and "B"
above were loaned or advanced thereon and become secured thereby and after said amounts were
advanced, no reloans or readvances have become secured thereunder up to the date hereof.

Submitted herewith is a Consolidation and Extension Agreement between
**Flushing Savings Bank, FSB** and YADLYND  CHERUBIN  and SERGE  CHERUBIN  ,
and dated MARCH 28, 2003 representing the above two (2) mortgages
as consolidated  into a single lien of $300,000.00  and does not represent
any new or other consideration, lien or indebtedness. No mortgage tax is due or payable on
this Consolidation and Extension Agreement.

As further and additional security for payment of the indebtedness secured by
the mortgages, YADLYND  CHERUBIN  and SERGE  CHERUBIN
has executed and delivered to Flushing Savings Bank, FSB a certain Assignment of Lessor's
interest in Lease(s) dated MARCH 28, 2003 (the "Assignment")

Said Consolidation and Extension Agreement and said Assignment are given solely for
the purpose of further securing the same principal indebtedness which is or under any
contingency may be secured by the above-mentioned Mortgages and that such Consolidation and
Extension Agreement and such Assignment do not create or secure any new or further indebtednes
or obligation other than the principal indebtedness or obligation secured by
or which under any contingency may be secured by the above-mentioned Mortgages.

WHEREFORE, deponent respectfully requests that such Consolidation and Extension Agreement
and such Assignment be declared exempt from taxation pursuant to the provisions of section 255
of Article 11 of the Tax Law.

_____
YADLYND  CHERUBIN

_____
SERGE  CHERUBIN

Sworn to before me this

28 day of MARCH, 2003

_____

KEVIN REGAN
Notary Public, State of New York
No. 01RE6069089
Qualified in Queens County
Commission Expires January 22, 2006

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2006040701815002001E7FA6

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 9

| | | |
|---|---|---|
| Document ID: **2006040701815002** | Document Date: 03-15-2006 | Preparation Date: 04-07-2006 |
| Document Type: AGREEMENT | | |
| Document Page Count: 7 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| ULTIMATE ABSTRACT SERVICES PICKUP<br>-KINGSLAND<br>STEWART TITLE INS. CO.9408UK-BP<br>121 WEST OAK STREET<br>AMITYVILLE, NY 11701<br>631-598-0474 | FLUSHING SAVINGS BANK, FSB<br>159-18 NORTHERN BLVD<br>FLUSHING, NY 11355<br>000-000-0000 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5090 | 13   Entire Lot   6 | | 96 MARTENSE STREET |

Property Type: DWELLING ONLY - 6 FAMILY

### CROSS REFERENCE DATA

CRFN_____   *or*   Document ID_____   *or* _____   Year_____   Reel ____   Page ____   *or* File Number_____

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| ANNA CHERUBIN<br>96 MARTENSE STREET<br>BROOKLYN, NY 11226 | FLUSHING SAVINGS BANK, FSB<br>144-51 NORTHERN BLVD<br>FLUSHING, NY 11354 |

x   Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 72.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 284,551.23 | Affidavit Fee: $ | 8.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing  Fee: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

Recorded/Filed                04-21-2006 16:40
City Register File No.(CRFN):
**2006000225562**

*Annette M Hill*

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
|---|---|

**2006040701815002001C7D26**

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 9 |
|---|---|---|
| Document ID: 2006040701815002 | Document Date: 03-15-2006 | Preparation Date: 04-07-2006 |
| Document Type: AGREEMENT | | |

**PARTIES**
**PARTY 1:**
SERGE CHERUBIN
96 MARTENSE STREET
BROOKLYN, NY 11226

*9468 ix*
*F. 5090*
*L = 13*

# ASSUMPTION AGREEMENT

AGREEMENT dated as of **March 15, 2006** by and between **Serge Cherubin and Anna Cherubin** residing at **96 Martense Street, Brooklyn, New York 11226** ("Mortgagor") and FLUSHING SAVINGS BANK, FSB, a federal savings bank with offices at 144-51 Northern Boulevard, Flushing, New York 11354 ("Mortgagee").

## W I T N E S S E T H

WHEREAS, **Serge Cherubin and Anna Cherubin** have acquired the premises known as **96 Martense Street, Brooklyn, New York 11226**, more particularly described on Schedule A attached hereto and made a part hereof ("Premises") by virtue of a deed dated **March 15, 2006** and intended to be duly recorded simultaneously herewith in the Office of the City Register of **Kings** County, New York;

WHEREAS, the Mortgagee is the holder of the following mortgage(s), assignment of rents and the note(s) and obligation(s) secured thereby:

(1) Mortgage Note, dated **May 25, 2001**, executed and delivered by **Serge Cherubin and Yadlynd Cherubin** to Flushing Savings Bank, FSB in the principal sum of **$232,500.00** ("Note");

(2) Mortgage dated **May 25, 2001**, executed and delivered by **Serge Cherubin and Yadlynd Cherubin** to Flushing Savings Bank, FSB in the principal sum of **$232,500.00** securing the Note and encumbering the Premises, which Agreement was recorded in the Office of the City Register of **Kings** County on **September 5, 2001 in Liber/Reel: 5273, Page: 1938** ("Mortgage"); and

(3) Mortgage Note dated **March 28, 2003**, executed and delivered by **Serge Cherubin and Yadlynd Cherubin** to Flushing Savings Bank, FSB in the principal sum of **$72,947.99** ("Consolidated Note");

(4) Mortgage and Consolidation Agreement, dated **March 28, 2003**, executed and delivered by **Serge Cherubin and Yadlynd Cherubin** to Flushing Savings Bank, FSB which Agreement by its terms consolidates the indebtedness under (1) and (3) above to form a single lien in the principal sum of **$300,000.00** securing the Consolidated Note and encumbering the Premises, which Agreement was recorded in the Office of the City Register of **Kings** County on **June 12, 2003 under CRFN: 2003000167138** ("Mortgage and Consolidation"); and

(5) Assignment of Lessor's Interest in Lease, dated **March 28, 2003**, executed and delivered by **Serge Cherubin and Yadlynd Cherubin** to Flushing Savings Bank, FSB, securing the consolidated indebtedness and encumbering the Premises, which assignment was recorded in the Office of the City Register of **Kings** County on **June 12, 2003 under CRFN: 2003000167139** ("Assignment of Rents"),

the documents at (1) to (5) above, to be collectively referred to herein as the "Mortgage Documents".

WHEREAS Mortgagor herein has requested the approval of the Mortgagee to their assumption of the obligations of **Serge Cherubin and Yadlynd Cherubin** under the Mortgage Documents and the other loan documents executed in connection therewith;

WHEREAS, Mortgagee has agreed to said request on the terms and conditions set forth herein.

NOW, THEREFORE, in pursuance of this Agreement, and in consideration of the sum of **Seven Hundred Fifty and 00/100 Dollars ($750.00)** (the "Modification Fee") and other valuable consideration, each to the other in hand paid, receipt whereof is hereby acknowledged, the parties hereto mutually covenant and agree as follows:

1.      Mortgagor hereby agrees to pay the Principal and the interest due and to become due thereon as provided in the Mortgage Documents and does hereby assume all of the obligations of **Serge Cherubin and Yadlynd Cherubin** under the Mortgage Documents and the other loan documents executed and delivered in connection therewith.

2.      The principal sum of **Two Hundred Eighty Four Thousand Five Hundred Fifty One and 23/100 DOLLARS ($284,551.23)** is now due and owing under the Mortgage Documents without any offset, defense or counterclaim whatsoever.

3.      The rate of interest payable on the principal sum due pursuant to the Consolidated Note is currently **Six and One Quarter Percent (6.25%)** per annum ("Existing Rate").

4.      Mortgagor shall pay to Mortgagee upon execution of the Agreement herein the monthly payment of principal and interest for **February, 2006** in the amount of **One Thousand Nine Hundred Seventy Nine and 01/100 Dollars ($1,979.01)** ["**February, 2006** Payment"], plus the monthly accrual for taxes and insurance premiums.  The **February, 2006** Payment is based upon the Existing Rate and the existing amortization schedule under the Consolidated Note.

5.      Upon receipt, application and collection of the **February, 2006** Payment, the principal sum due under the Mortgage Documents shall be **Two Hundred Eighty Four Thousand Fifty Four and 26/100 Dollars ($284,054.26)** ["Principal"], which shall be due without any offset, defense or counterclaim whatsoever.

6.      The Modification Fee shall not be applied in the reduction of the principal sum due under the Mortgage Documents.

7.      The rate of interest payable on the Principal pursuant to the Consolidated Note for the remainder of the term of the Consolidated Note, and the monthly payment of principal and interest payable for the remainder of the term of the Consolidated Note, prior to a default under the Mortgage Documents shall continue to be calculated in accordance with the provisions of the Consolidated Note.

8.     Mortgagor shall continue to pay the monthly accrual for taxes, water and sewer charges and insurance premiums as provided in the Mortgage Documents.

9.     The Prepayment Rider contained in the Consolidated Note shall remain in full force and effect.

10.    All other terms, conditions and provisions of the Mortgage Documents, and all other loan documents executed in connection therewith, including without limitation any charge for late payments and any default rate of interest, remain in full force and effect as provided therein unless expressly modified herein.

11.    Mortgagor and Mortgagee hereby agree that, when the terms, covenants or provisions contained in the Mortgage Documents conflict with the terms, covenants, provisions, and conditions contained herein, the terms, covenants, provisions and conditions contained herein shall prevail except that nothing herein will extinguish, impair, limit, discharge, cancel or diminish the lien of the mortgage as herein modified.

12.    Mortgagor hereby represents to the Mortgagee that:

    (a)     there currently is no defense, offset, claim or counterclaim existing with respect to the indebtedness evidenced by the Mortgage Documents and to the extent any defense, offset, claim or counterclaim exists without the knowledge of the Mortgagor, the same is hereby waived.

    (b)     the Mortgage is a valid first mortgage lien in favor of the Mortgagee on the Premises, securing the indebtedness evidenced by the Consolidated Note.

    (c)     the Mortgagor is the sole owner of the Premises, and no mortgage, ground leasehold interest, judgment or other lien encumbers the Premises (other than the mortgage).

    (d)     all real estate taxes and municipality charges in respect of the Premises have been paid as of the date on which same are due.

    (e)     no material adverse change in the financial condition of the Mortgagor has occurred since the date of the most recent financial statement of the Mortgagor delivered to the Mortgagee.

    (f)     there is no action, suit or proceeding pending or threatened against or affecting the Mortgagor or the Premises.

    (g)     the Premises has not been damaged or destroyed by fire or other casualty, and no condemnation or eminent domain proceedings have been commenced with respect to the Premises and, to the best of the Mortgagor's knowledge, no such condemnation or eminent domain proceeding is threatened.

(h)   to the best of the Mortgagor's knowledge, the Premises is being used and operated in compliance with all applicable laws.

13.   Mortgagor shall cause to be delivered to the Mortgagee the following:

(a)   executed affidavits as required under Section 255 of the Tax Law in order to record this Agreement without the payment of additional mortgage tax;

(c)   a recertification and modification of Title Insurance **Policy # 5412-2712586** issued by **Fidelity National Title Insurance Company**, insuring Mortgagee as holder of the mortgage in the reduced Principal balance, as modified hereby, and as assumed by Mortgagor hereby ("Title Policy"); and

(d)   the payment of all fees required by the Mortgagee, the fees for the Title Policy, and all fees associated with the preparation of this Agreement and all other documents associated herewith, including, but not limited to, the Mortgagee's attorney's fees, and the fees for the recording of this Agreement and any other documents required to be recorded herewith.

14.   Mortgagor acknowledges receipt of a copy of the Note, Mortgage, and Assignment of Rents.

15.   This Agreement shall bind and inure to the benefit of each of the parties hereto and their respective successors and assigns and may not be changed or terminated orally.


IN WITNESS WHEREOF, this Agreement has been duly executed by the parties hereto as of the day and year first above written.


**Serge Cherubin**


**Anna Cherubin**


**FLUSHING SAVINGS BANK, FSB**
**By:**


**JOHANNA M. CAVA**
**Vice President**

STATE OF NEW YORK   )
                           ss.:
COUNTY OF QUEENS   )

On the **15**[th] day of **March**, in the year **2006,** before me, the undersigned, a notary public in and for said State, personally appeared **Serge Cherubin and Anna Cherubin,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

SEAL

KEVIN REGAN
Notary Public, State of New York
No. 01RE6069089
Qualified in Queens County
Commission Expires January 22, 2006

STATE OF NEW YORK   )
                           ss.:
COUNTY OF QUEENS   )

On the **15**[th] day of **March**, in the year 2006, before me, the undersigned, a notary public in and for said State, personally appeared **Johanna M. Cava**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

SEAL

NICOLE S. DEBARE
Notary Public, State of New York
No. 01DE6114760
Qualified in Kings County
Commission Expires August 23, 20__

SCHEDULE A

File No: **9408UK**

## LEGAL DESCRIPTION

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

**BEGINNING** AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF MARTENSE STREET WITH THE EASTERLY SIDE OF BEDFORD AVENUE;

**RUNNING THENCE** SOUTHERLY ALONG THE EASTERLY SIDE OF BEDFORD AVENUE, 27 FEET 2 INCHES;

**THENCE** EASTERLY PARALLEL WITH MARTENSE STREET, PART OF THE DISTANCE THROUGH A PARTY WALL, 74 FEET 2-3/4 INCHES TO THE WESTERLY SIDE OF LAND CONVEYED TO JOHN C. SAWKINS BY DEED RECORDED IN LIBER 1349 OF CONVEYANCES AT PAGE 301;

**THENCE** NORTHERLY ALONG SAID WESTERLY SIDE OF LAND FORMERLY OF JOHN C. SAWKINS, 27 FEET 2-1/8 INCHES TO THE SOUTHERLY SIDE OF MARTENSE STREET;

**THENCE** WESTERLY ALONG THE SOUTHERLY SIDE OF MARTENSE STREET, 75 FEET 2-1/4 INCHES TO THE POINT OR PLACE OF **BEGINNING**.

TITLE # **9408UK**
STATE OF New York
CASE ID: **281905**
LOAN # **1407065513**

---

## ASSUMPTION AGREEMENT

---

**Serge Cherubin and Anna Cherubin**

to

FLUSHING SAVINGS BANK, FSB

---

The premises affected by the
within instrument lie in
**KINGS** County, State of New York
Block: **5090**; Lot(s): **13**

---

Record & Return:
FLUSHING SAVINGS BANK, FSB
159-18 NORTHERN BOULEVARD
FLUSHING, NY 11358
Attn: Loan Servicing Dept

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|

2006040701815002001SB127

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| Document ID: 2006040701815002 | Document Date: 03-15-2006 | Preparation Date: 04-07-2006 |
| Document Type: AGREEMENT | | |

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT        1

AFFIDAVIT MADE PURSUANT TO
ARTICLE 11, §255 OF THE TAX LAW

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF QUEENS     )

    **Serge Cherubin and Anna Cherubin**, being duly sworn, depose(s) and say(s):

    That we are the mortgagors of the hereinafter described mortgages and the Notes secured thereby and are familiar with the facts set forth herein:

    Mortgage dated **May 25, 2001**, executed and delivered by **Serge Cherubin and Yadlynd Cherubin** to Flushing Savings Bank, FSB in the principal sum of **$232,500.00** which Agreement was recorded in the Office of the City Register of **Kings** County on **September 5, 2001 in Liber/Reel: 5273, Page: 1938** and upon which a Mortgage tax of $ 4,650.00 was paid thereon; and

    Mortgage and Consolidation Agreement, dated **March 28, 2003**, executed and delivered by **Serge Cherubin and Yadlynd Cherubin** to Flushing Savings Bank, FSB in the principal sum of **$72,947.99**, which Agreement by its terms consolidates both mortgages to form a single lien in the principal sum of **$300,000.00**, which Agreement was recorded in the Office of the City Register of **Kings** County on **June 12, 2003 under CRFN: 2003000167138** and upon which a mortgage tax of $ 1,458.00 was paid and on which Consolidated Mortgages there is currently outstanding the principal sum of **$284,551.23.**

    Said Consolidated Mortgage was assumed and modified by an Assumption Agreement dated the 15th day of **March, 2006** between **Serge Cherubin and Anna Cherubin** and Flushing Savings Bank, FSB and intended to be recorded simultaneously herewith in the Office of the City Clerk of **Kings** County (the "Assumption Agreement").

    Said Assumption Agreement is given solely for the purpose of further securing the same principal indebtedness which is or under any contingency may be secured by the above-mentioned Consolidated Mortgage and that such Assumption Agreement does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the above-mentioned Consolidated Mortgage.

    WHEREFORE, deponent(s) respectfully request(s) that the Assumption Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law.


_____
**Serge Cherubin**


_____
**Anna Cherubin**

Sworn to before me this
15th day of **March, 2006**

_____
Notary Public

KEVIN REGAN
Notary Public, State of New York
No. 01RE6069089
Qualified in Queens County
Commission Expires January 22, 2006    **SEAL**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2009073100473001001E01F1

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 4

| | | |
|---|---|---|
| Document ID: 2009073100473001 | Document Date: 07-16-2009 | Preparation Date: 07-31-2009 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 3 | | |

**PRESENTER:**
RAPID RECORDING, LLC
***(HOLD-FOR-PICKUP)***
4207 AVENUE M
BROOKLYN, NY 11234
718-677-1085
info@rapidrecording.com/D-113

**RETURN TO:**
MARK TRESS
419 CEDARBRIDGE AVENUE
#104
LAKEWOOD, NJ 08701

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5090 | 13   Entire Lot | 6 | 96 MARTENSE STREET |

Property Type: DWELLING ONLY - 6 FAMILY

### CROSS REFERENCE DATA

BROOKLYN **Year:** 2001   **Reel:** 5273   **Page:** 1938

### PARTIES

**ASSIGNOR/OLD LENDER:**
FLUSHING SAVINGS BANK, FSB
144-51 NOTHERN BOULEVARD
FLUSHING, NY 11354

**ASSIGNEE/NEW LENDER:**
96 MARTENSE ST, LLC
P.O. BOX 2
LAKEWOOD, NJ 08701

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed        08-03-2009 10:34
City Register File No.(CRFN):
**2009000238685**

*Annette M Hill*

*City Register Official Signature*

**RECORD AND RETURN TO:**

Mark Tress
419 Cedarbridge Avenue, #104
Lakewood, New Jersey 08701

Section:
Block : 5090
Lot: 13
County: Kings

## ASSIGNMENT OF MORTGAGE

KNOW THAT FLUSHING SAVINGS BANK, FSB, a federal savings bank having its principal place of business at 144-51 Northern Boulevard, Flushing, New York 11354, Assignor, in consideration of TEN ($10.00) DOLLARS paid by 96 Martense St. LLC, a New York limited liability company having an address at P.O. Box 2, Lakewood, New Jersey 08701, Assignee, hereby assigns unto the Assignee the mortgage described in Schedule "A" attached hereto and made a part hereof by this reference;

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to become due thereon with the interest; to have and to hold the same unto the assignee and to the successors, legal representatives and assigns of the Assignee forever. The Assignee is not acting as a nominee of the mortgagor and the mortgage continues to secure a bona fide obligation. This Assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

This assignment is made without recourse in any event to the Assignor. The word Aassignor@ or Aassignee@ shall be construed as if it read Aassignors@ or Aassignees@ whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment without covenants this **16** day of July, 2009.

FLUSHING SAVINGS BANK, FSB

By _Leonard A. Cecere_
Leonard A. Cecere
Vice President

STATE OF NEW YORK)
             ) ss.:
COUNTY OF QUEENS)

On the 16 day of July, in the year 2009 before me, the undersigned, a notary public in and for said State, personally appeared Leonard A. Cecere personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MARCIA Y. WITTER
Notary Public, State of New York
No. 01WI6183883
Qualified in Bronx County
Commission Expires March 31, 2012

SEAL

## SCHEDULE "A"

1.       Mortgage dated May 25, 2001, made and executed by Serge Cherubin and Yadlynd Cherubin in favor of Emigrant Funding Corporation in the principal amount of $232,500.00 recorded in the Office of the Register of the City of New York, Kings County, on September 5, 2001 in Reel 5273, Page 1938;

2.       Mortgage and Consolidation Agreement dated March 28, 2003, made and executed by Serge Cherubin and Yadlynd Cherubin in favor of Flushing Savings Bank, FSB in the principal amount of $72,947.99, which by its terms was consolidated with mortgage 1 above, and which was recorded in the Office of the Register of the City of New York, Kings County, on June 12, 2003 as CRFN 2003000167138.

3.       Which above Mortgages were assumed by an Assumption Agreement dated March 15, 2006, made and executed by Serge Cherubin and Anna Cherubin and recorded in the Office of the Register of the City of New York, Kings County, on April 21, 2006 as CRFN 2006000225562.

## EXHIBIT "G"

| | |
|---|---|
| Principal balance due April 1, 2009: | $263,285.58 |
| Unpaid interest March 1, 2009 through March 31, 2009 (5.25% per annum): | $   1,151.87 |
| Unpaid interest, April 1, 2009 through January 28, 2010 (24% per annum): | $ 52,306.07 |
| Late charges: | $      583.24 |
| Escrow deficit: | $   2,396.95 |
| Property inspection fees: | $        18.00 |
| Recording fee: | $      175.00 |
| **TOTAL AMOUNT IN DEFAULT TO DATE:** | **$319,916.71** |

11